IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY MARTIN HESS,

    Petitioner,                           No. CIV S-07-0909 WBS EFB P

    vs.

JAMES E. TILTON,

    Respondent.                        FINDINGS & RECOMMENDATIONS

_____/

    Petitioner is a former state prisoner proceeding without counsel on a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. Respondent moves to dismiss on the ground that the petition is untimely. Petitioner, in opposition, argues that he is entitled to statutory tolling and that he is actually innocent of the crime for which he was convicted. For the reasons explained below, the court finds that respondent's motion must be granted.

**I.    Procedural History**

    On November 13, 2001, petitioner was convicted of assault with force likely to cause great bodily injury and a number of sentencing enhancements were found true. Am. Pet. ("Pet.") at 2. Petitioner was sentenced to a determinate state prison term of nine years. *Id.*; Resp.'s Mot. to Dism., Docs. Lodged in Supp. Thereof ("Lodged Doc.") 1. On April 30, 2003, the California Court of Appeal, Third Appellate District, affirmed the judgment. Lodged Doc. 2; Pet., Mem. of

1

P. & A. in Supp. Thereof ("Pet.'s P. & A.") at 8. On July 16, 2003, the California Supreme Court denied review. Lodged Doc. 4; Pet.'s P. & A. at 8.

Petitioner subsequently filed three *pro se* post-conviction collateral challenges. On July 13, 2004, petitioner filed a petition for post-conviction relief in Shasta County Superior Court. Lodged Doc. 5; Pet.'s P. & A. at 8. On August 12, 2004, the superior court partially denied twelve grounds of the petition and ordered further briefing on the remaining three grounds. Lodged Doc. 6; Pet.'s P. & A. at 8. On October 14, 2004, the superior court denied the remaining three grounds of the petition. Lodged Doc. 7; Pet.'s P. & A. at 9. Next, on September 22, 2005, petitioner filed a petition for post-conviction relief in the California Court of Appeal, Third Appellate District. Lodged Doc. 8. On October 20, 2005, the court of appeal denied the petition. Lodged Doc. 9; Pet.'s P. & A. at 9. Thereafter, on May 16, 2006, petitioner filed a petition for post-conviction relief in the California Supreme Court. Lodged Doc. 10. On August 30, 2006, the supreme court denied the petition. Lodged Doc. 11; Pet.'s P. & A. at 9-10. Petitioner filed the instant action on May 14, 2007.

## II.    Legal Standards

A one-year limitation period for seeking federal habeas relief begins to run from the latest of the date the judgment became final on direct review, the date on which a state-created impediment to filing is removed, the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review or the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). The judgment on direct review becomes final when the 90-day limit for filing a petition for certiorari expires. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). The period "is not tolled from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). The period is tolled once a petitioner properly files a state post conviction application, and remains tolled for the entire time that application is "pending." 28 U.S.C. § 2244(d)(2). In

California, a properly filed post conviction application is "pending" during the intervals between a lower court decision and filing a new petition in a higher court. *Carey v. Saffold*, 536 U.S. 214, 223 (2002). A federal habeas application does not toll the limitations period under 28 U.S.C. § 2244(d)(2). *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

A court may grant equitable tolling when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States District Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). These circumstances must actually cause the untimeliness. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

Petitioner has the burden of showing facts entitling him to statutory and to equitable tolling. *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

**III. Analysis**

    **A. Timeliness**

On July 16, 2003, the California Supreme Court denied review. Lodged Doc. 4. The state appeal process became "final" within the meaning of § 2244(d)(1)(A) when the time for filing a petition for writ of certiorari expired ninety days later, on October 14, 2003. Supreme Ct. R. 13; *Bowen*, 188 F.3d 1157. The one-year limitations period commenced running the following day. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Thus, petitioner had until October 14, 2004 to file his federal habeas petition. However, petitioner did not file a petition in federal court until May 14, 2007. Absent tolling, petitioner's application in this court is over two-and-a-half years late.

////

////

The limitations period ran from date the judgment became final until June 29, 2004, the date the first state petition was filed under the mailbox rule.[1] Lodged Doc. 5. Thus, at the time the first state petition was filed, 259 days of the one-year limitations period had elapsed.

As conceded by respondent, petitioner is entitled to statutory tolling for the period during which his first state petition was pending. Resp.'s Mot. to Dism. at 4. The first state petition was pending for a period of 107 days, from June 29, 2004, the date it was filed, until October 14, 2004, the date it was denied. Statutory tolling for this time extended the limitations period from October 14, 2004, to January 30, 2005. As noted, the instant petition was not filed until May 14, 2007.

The next question is whether petitioner is entitled to interval tolling for the time period between the superior court's denial of habeas relief on October 14, 2004 and the filing of the petition in the appellate court on September 22, 2005, a period exceeding 11 months. Respondent argues that this period should not be tolled because petitioner unreasonably delayed in filing the second petition. Resp.'s Mot. to Dism. at 4; *see also Saffold*, 536 U.S. 214 (finding that where a petitioner unreasonably delays between state court petitions, there is no tolling for that intervening period). Thus, respondent argues, the instant petition should be dismissed as untimely because the statute of limitations ran during the time between the denial of the first petition and the filing of the second petition, *i.e.*, January 30, 2005, and petitioner did not commence this action until May 14, 2007, over two years later. Resp.'s Mot. to Dism. at 5.

Petitioner argues that "the time required by [him] to obtain medical records, do legal research, and prepare [the] petition was reasonable under California's [] original writ system and its flexible procedural rules." Pet.'s Opp'n to Resp.'s Mot. to Dism. ("Pet.'s Opp'n") at 4. In essence, petitioner appears to argue that he is entitled to statutory tolling because his state

---

[1] Even though the petition is file-stamped July 13, 2004, Lodged Doc. 5, for purposes of the present motion, the court assumes (as does respondent) that petitioner put the petition in the prison mail the day he signed it, and uses that as the filing date under the prisoner mailbox rule. Resp.'s Mot. to Dism. at 3-4, n.2. *See generally Houston v. Lack*, 487 U.S. 266, 276 (1988).

4

petitions were either filed in a timely fashion or good cause justified any delay.[2]

Even assuming petitioner is entitled to statutory tolling from the date he filed his first state petition on June 29, 2004, until his third petition was denied by the supreme court on August 30, 2006, petitioner's federal petition is still untimely. As stated above, 259 days of the limitations period had elapsed by the time petitioner filed his first state petition. *See Nino*, 183 F.3d at 1006 ("[the] statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval."). Since no petition was pending after the supreme court's denial on August 30, 2006, the statute of limitations continued to run from that date forward. *See Saffold*, 536 U.S. at 219-20 ("[A]n application is pending as long as the ordinary state collateral review process is 'in continuance'--*i.e.*, 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'"). Thus, the one-year limitations period continued to run from August 30, 2006 until it expired, 106 days later, on December 14, 2006. Accordingly, petitioner's May 14, 2007 filing in this court is still six months late.

In this circuit the one-year limitations period may be equitably tolled. *Calderon*, 163 F.3d at 542. However, equitable tolling is applicable only "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Roy v. Lampert*, 455 F.3d 945, 950 (9th Cir. 2006). Specifically, the prisoner must show that the extraordinary circumstances were the cause of his untimeliness. *Spitsyn*, 345 F.3d at 799. Equitable tolling is

---

[2] Petitioner's opposition brief does not reference a single date, nor does he indicate which periods of time he believes should be tolled. Petitioner's most specific argument is that "[i]n his petition to the California Supreme Court," petitioner explained that "any delay had been caused by the difficulty in obtaining the newly discovered evidence presented herein, evidence which also pointed to other deficiencies in the trial procedures complained of herein." Pet.'s Opp'n at 6-7. Any argument that might justify petitioner's delay in filing his petition with the supreme court, however, is not responsive to respondent's argument that petitioner unreasonably delayed in filing his petition with the appellate court. Nevertheless, and as explained herein, even if petitioner is entitled to statutory tolling for the entire period during which he was attempting to exhaust state court remedies, the petition is still untimely.

justified in few cases, as the threshold necessary to trigger such tolling is very high. *Id.* The petitioner bears the burden of showing that he is entitled to equitable tolling, and the determination whether such tolling applies is a fact-specific inquiry. *Id.*

Here, petitioner has not only failed to meet that high threshold. He has not even expressly argued that he is entitled to equitable tolling. It is also not evident from the record that petitioner would be entitled to equitable tolling. Petitioner makes several conclusory arguments as to why this court should find his petition timely, including the following: (1) preparing a petition is "time consuming;" (2) this case is "extremely complicated;" (3) it was "difficult" and "time consuming to locate" medical records; (4) there were "instances of interference by prison officials;" (5) there are limitations on "the amount of paperwork an inmate [can] possess, such that he had to "rely on his family to maintain the required materials which were extensive in volume;" (6) he had to rely on the prison mail system, which is "notoriously slow;" (7) he experienced "law library access problems;" and (8) because the materials in the law library are not current, "petitioner required additional time to make current case law requests to his family." Pet.'s Opp'n at 5, 7-8. Petitioner's arguments take the form of generalized and unsubstantiated allegations that do not relate to any identifiable periods of time. The arguments are devoid of any specific facts from which this court could determine that extraordinary circumstances beyond petitioner's control made it impossible for him to timely file a petition. Accordingly, the court finds petitioner is not entitled to equitable tolling of the one-year limitations period and thus, his petition is untimely.

**B.    Actual Innocence**

Petitioner attempts to circumvent the statute of limitations bar by claiming he meets the standard for the "actual innocence" gateway articulated by *Schlup v. Delo*, 513 U.S. 298 (1995). Pet.'s Opp'n at 8. Neither the Supreme Court nor the Ninth Circuit have decided whether there is an actual innocence exception to a violation of § 2244(d)'s limitations period. *See Majoy v. Roe*, 296 F. 3d 770, 775-76 (9th Cir. 2002). Even if an actual innocence exception to the

6

limitations period existed, petitioner has not met the standard for actual innocence.

Under the actual innocence standard, a petitioner must establish that the alleged constitutional error "has probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Petitioner must demonstrate not just that a reasonable doubt exists in light of the new evidence, but rather, that in light of the new evidence, no reasonable juror would have found him guilty. *Schlup*, 513 U.S. at 329; *see House v. Bell*, 547 U.S. 518, 537 (2006) (a credible *Schlup* gateway showing "requires new reliable evidence . . . that was not presented at trial.").

As stated above, petitioner was convicted of assault with force likely to cause great bodily injury. Pet. at 2. Specifically, he was found guilty of shaking his five-week old daughter, Bria, on February 15, 2001, causing her permanent brain damage. Pet.'s Opp'n, Attach. 1; Pet.'s P. & A. at 8, 15. Petitioner admitted that he shook Bria, but insisted it was only in an attempt to clear her throat because she was choking on her own vomit. Pet.'s P. & A. at 12. Petitioner testified at trial that he did not think that he shook Bria hard enough to cause her to suffer the severity of injuries that she sustained.[3] *Id.* at 12. Additionally, the defense contended that it was Bria's mother, rather than petitioner, who had forcibly shaken the baby. *Id.* at 13.

Petitioner presents evidence that at 14-months old, Bria was diagnosed with meningitis, and that it is likely that Bria contracted the meningitis at birth. *Id.* at 16-17; Pet., Ex. C (Lucile Salter Packard Children's Hospital, Medical Report dated March 20, 2002).[4] According to

---

[3] Bria's injuries included, among others, brain swelling, fever, bilateral retinal bleeding and hemorrhaging, loss of hearing, petechiae (small capillaries had ruptured), bruising, vomiting, blindness, and the need to be fed though a tube in her stomach. Pet.'s P. & A. at 11, 16, 20-22, 24.

[4] Notably, this medical report also indicates that "many babies are not effected by [Bria's form of meningitis] and often it will likely not be detected for a few weeks or even months." Pet., Ex. C (Lucile Salter Packard Children's Hospital, Medical Report dated March 20, 2002). The report also suggests that the meningitis "was likely in Bria since the time of her birth and simply did not manifest until this hospitalization, possibly because her reserves were so low." *Id.*

7

petitioner, Bria was diagnosed with two forms of meningitis, and the intestinal meningitis "now explains Bria's digestive problems, and the Newborn Bacterial Meningitis Group B now explains the brain swelling and other complications." Pet.'s P. & A. at 16. Petitioner also contends that "this evidence would have caused serious doubt in the minds of the jurors that petitioner had the mental state to criminally assault his daughter."[5] *Id.* at 26; Pet.'s Opp'n at 9.

Petitioner also contends that Bria's symptoms are documented in a February 16, 2001 medical report, and that this report was "concealed from the birth parents . . . and possibly the police and prosecution." Pet.'s P. & A. at 15. According to petitioner, the symptoms listed in this report are all symptoms of meningitis. *Id.* (listing the following symptoms: continuous high pitched cry; sleeps less than one hour after feedings; hyperactive "moro reflex"; moderate severe tremors; generalized convulsions; fever; projectile vomiting; and watery stools). However, petitioner has not provided the court with a copy of this report.[6]

Additionally, petitioner contends that "[s]ome of [Bria's] birth records are now available"[7] and "show that Bria suffered from seizures beginning shortly after birth . . ." *Id.*

---

[5] In support of his argument that there is "new evidence" of his mental state, petitioner also provides the report of a pediatric forensic pathologist who was consulted for purposes of his appeal. *See* Pet., Ex. E. In the report, dated February 11, 2003, the pathologist offers her opinion to a reasonable degree of medical certainty, that Bria "suffered blunt force injuries to her head which resulted in diffuse axonal injury consistent with shaken impact infant." *Id.* The report goes on to suggest that Bria's mother, as opposed to petitioner, caused Bria's injuries. *Id.* The report does not, however, shed light on petitioner's mental state and most certainly does not support petitioner's argument that the cause of Bria's injuries was meningitis.

[6] Petitioner has attached a document that lists the same symptoms that he states are listed in the February 16, 2001 report. This attachment however, does not refer to Bria, and appears to be dated January 6, 2001, two days before Bria was born. *See* Pet., Ex. B (Mercy Medical Center Redding Neonatal Abstinence Scoring System).

[7] Petitioner attaches to his petition various medical records, including: (1) A clinical record from the Shasta County Community Health Center, signed February 9, 2001, noting that Bria was "fussier than usual," "seem[ed] constipated," had "projectile vomiting," and the possibility of a viral illness, Pet., Ex. A; (2) nursery discharge orders from Mercy Medical Center Redding signed January 10, 2001, Pet., Ex. B; (3) a letter from the pediatric surgery division at Stanford University Medical Care, dated January 30, 2002, describing the "deterioration in Bria's clinical course," Pet., Ex. B; and (4) a record that Bria received a MRI of

However, petitioner does not provide any records that support this claim. Even if he had, it would not be "new" evidence, as petitioner testified at trial that Bria experienced seizures prior to her injuries. *See id.* at 12. Thus, while petitioner contends that there is "new" evidence that Bria exhibited symptoms of meningitis before her injuries, he does not present any evidence showing the same. At most, according to petitioner's list of meningitis symptoms, the purportedly "new" evidence suggests that Bria exhibited only one symptom of meningitis prior to her injuries. *See* Pet., Ex. A (Shasta County Community Health Center Clinical Record, signed February 9, 2001) (noting that "mom is worried that [Bria] has projectile vomiting.").

Contrary to petitioner's assertions, the new evidence falls far short of establishing that meningitis was the cause of Bria's medical condition. As argued by respondent, "Bria's treating physicians consistently either discounted meningitis or determined that Bria's injuries had to be caused by trauma and/or shaken baby syndrome." Resp.'s Mot. to Dism. at 7 (summarizing individual trial testimony of at least six doctors). It is not enough that the new evidence show the existence of reasonable doubt; rather, petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him." *Schlup*, 513 U.S. at 329. Thus, as the Ninth Circuit has stated, "the test is whether, with the new evidence, it is more likely than not that no reasonable juror would have found [p]etitioner guilty." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001). Under this standard actual innocence means factual innocence, not merely legal insufficiency. *Bousley*, 523 U.S. at 623-24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Here, petitioner admitted to shaking Bria. Pet.'s P. & A. at 12, 27.

////

---

her spine on April 4, 2002, noting both her "brain injury," and "meningitis," Pet., Ex. B. Petitioner asserts that, "[t]he birth records and early treatment records were concealed" and that "[t]he records available to defense counsel [were] missing all of the pages that showed the early signs of meningitis." Pet.'s P. & A. at 26. Petitioner does not, however, articulate the significance, if any, of these particular records. Nor is he specific as to which of these records, if any, constitute "new reliable evidence" that was not presented at trial. *See House*, 547 U.S. at 537.

9

Additionally, the doctors testified that the retinal hemorrhaging and injury to Bria's brain could only have occurred from a traumatic shaking. Lodged Doc. 12 (Reporter's Transcript of Appeal, Volume Two) at 308-11, 333, 373-74, 454, 539; Lodged Doc. 13 (Reporter's Transcript of Appeal, Volume Two) at 604-06, 623, 762-765. That Bria was later diagnosed with meningitis, and may have had it since birth, does not make it is more likely than not that no reasonable juror would have convicted petitioner. Thus, petitioner has failed to establish a claim of "actual innocence."[8]

Thus, since petitioner is not entitled to equitable tolling and cannot meet the actual innocence gateway, the petition is untimely by six months and should be dismissed.

Accordingly, it is hereby RECOMMENDED that respondent's motion to dismiss be granted and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 5, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[8] Petitioner requests an evidentiary hearing "to establish whether or not the newly discovered evidence meets the *Schlup* threshold." Pet.'s Opp'n at 11. However, a hearing is not warranted, as petitioner fails to show "what more an evidentiary hearing might reveal of material import on his assertion of actual innocence." *Gandarela v. Johnson*, 286 F.3d 1080, 1087-88 (9th Cir. 2002) (finding that petitioner's new evidence in the form of affidavits "speak for themselves and do not support [petitioner's] claim of actual innocence.").

10